KIRKPATRICK *v.* REESE, ADMINISTRATRIX.

4-9527                                                240 S. W. 2d 1

Opinion delivered June 11, 1951.

J. E. Hyatt, Jr., and A. B. Barham, for appellant.

D. Fred Taylor, Jr., for appellee.

GEORGE ROSE SMITH, J. This is an appeal from the action of the probate court in denying a $1,500 claim filed by the appellant against the estate of her deceased step-mother, Addie Pittman. The theory of the claim is that Mrs. Pittman's negligence resulted in the destruction of a tenant house on land which the appellant had gratui-tously leased to Mrs. Pittman. The appellee, as admin-istratrix, disallowed the claim, and the probate court upheld the disallowance.

The appellant's father died in 1935, survived by his widow and four children by a former wife. In order to provide an income for their stepmother the children leased to her, for a recited consideration of one dollar, certain property they had inherited from their father. Included in the lease was a tract, owned by the appel-lant, on which the tenant house was situated. The lease provided that Mrs. Pittman was to have the income from the property as long as she remained unmarried, that the property would be subleased judiciously, and that it would not "be committed to waste." The house was de-stroyed by fire on November 21, 1949, five days before Mrs. Pittman's death.

Mae Mueller, with her husband and children, was occupying the house as a subtenant when it burned. Mrs. Mueller was the only witness who testified below as to the cause of the fire. She said that the brick flues had cracks in the cement all during the six or seven years the family occupied the dwelling. For some time the family

burned coal, but the stove smoked so badly that they changed to an oil stove in the living room.

The fire occurred at about nine thirty in the morning, while a wood fire was burning in the kitchen. The blaze began in the attic, at a point about twelve feet from the kitchen chimney. The wind was blowing through cracks in the roof and toward the place where the fire was discovered. Mrs. Mueller did not see the fire start, but she believed that it must have been caused by a spark from the flue.

We agree with the probate court's view that this testimony does not show Mrs. Pittman to have been guilty of waste. The writ of waste originated centuries before the action on the case had developed to the point of recognizing negligence as a tort, and consequently the older decisions do not consider the tenant's liability for permissive waste as being founded on negligence. Kirchley, "Liability for Waste," 8 Col. L. Rev. 425, 624. But the modern decisions, especially in America, hold that the tenant's duty is to exercise reasonable care to guard the premises against injury. *United States* v. *Bostwick,* 94 U. S. 53, 24 L. Ed. 65; *Lothrop* v. *Thayer,* 138 Mass. 466, 52 Am. Rep. 286. Nevertheless the tenant is not an insurer. As the court said in the *Lothrop* case: "Most fires originating in buildings are undoubtedly due to negligence in the construction, or to a want of repair, or to the bad condition of the building, chimneys, or heating apparatus, or to negligence in the management of the building or of the fires in it; and to require the occupants at their peril always to adopt all improvements which are practicable, and to take all precautions which science can suggest to prevent fires, or the spread of fires, would be intolerable."

Tested by the standard of ordinary care Mrs. Pittman's conduct did not amount to negligence. The appellant argues that the testimony shows the fire to have been caused by a spark from the flue, and we may assume this to be true. There is still no liability, however, unless Mrs. Pittman should have discovered the hazard by the

exercise of ordinary care. On this point the appellant's proof falls short of making a case.

That the stove smoked when coal was burned is merely an indication that the chimney was obstructed by soot, a common occurrence. Indeed, Mrs. Mueller testified that the chimneys were mopped to alleviate the smoke. The only other indication of negligence is the existence of cracks in the cement of the brick flues. But it is a matter of common knowledge that cement develops cracks when exposed to heat. Mrs. Mueller does not say that the cracks were so large as to constitute a clearly present fire hazard, and her conduct implies the contrary. For the family continued to live in the house for at least six years, with their household belongings, without making a specific complaint that the flues were dangerous. It is not intimated that the house had ever caught fire before, or even that sparks had been seen coming from the flue, although one of the Mueller children slept in the attic. In these circumstances the probate court correctly denied the claim.

Affirmed.