[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The defendant moves for summary judgment on the ground that the plaintiff is barred from seeking damages from the defendant pursuant to implied covenants in the lease between the defendant and the plaintiff's subrogor. CT Page 6878
On November 25, 1991 the plaintiff, Aetna Life Casualty, filed a one count complaint against the defendant, Brian Mark. The plaintiff alleges that it provided business owner's insurance coverage on real property located at 479 Buckland Road, South Windsor, Connecticut, to Samsel Properties Partnership (hereinafter "Samsel"). The plaintiff alleges that the defendant was a tenant at this property, and that the defendant negligently caused a fire, which damaged this property. The plaintiff alleges that Samsel has assigned its rights against the defendant to the plaintiff.
On October 29, 1992 the defendant filed an amended answer and two special defenses. In the first special defense, the defendant alleges that the fire and resulting damages were caused by Samsel's negligence, in that Samsel failed to install fire suppression equipment, and in that Samsel constructed its property using unsafe designs and materials. In the second special defense, the defendant alleges that, pursuant to implied covenants in the lease between Samsel and the defendant, Samsel was responsible to insure against the risk of loss caused by fire, for the benefit of Samsel, the defendant, and the other tenants. The defendant alleges that the plaintiff is barred from seeking damages against the defendant, because the insurance was procured for the defendant's benefit.
On February 17, 1993 the defendant filed a motion for summary judgment on the ground that because Samsel was responsible to insure against the risk of loss caused by fire for the benefit of the defendant, inter alia, the plaintiff is barred from seeking damages from the defendant. The defendant also filed a supporting memorandum of law, a copy of the lease, and the affidavits of the defendant; John Samsel, a partner of Samsel; and Duane Pease, a claim representative of St. Paul Fire Marine Insurance Company.
On March 26, 1993 the plaintiff filed a memorandum in opposition to the motion for summary judgment. The motion for summary judgment was argued at short calendar on March 29, 1993.
Summary judgment may be granted when "the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book 384; Strada v. Connecticut Newspapers, Inc., 193 Conn. 313, CT Page 6879 316-17, 477 A.2d 1005 (1984). "The burden of establishing the absence of a genuine issue of material fact and the entitlement to recovery as a matter of law lies with the moving party." Zapata v. Burns, 207 Conn. 496, 592, 542 A.2d 700 (1988). A motion for summary judgment may be used to test the legal sufficiency of the pleadings. Boucher Agency, Inc. v. Zimmer,160 Conn. 404, 409, 279 A.2d 540.
I. Motion for Summary Judgment Regarding the Second
Special Defense
In its memorandum in opposition to the defendant's motion for summary judgment, the plaintiff argues that the defendant has moved for summary judgment with respect to one of his special defenses. Plaintiff argues that this is improper, and, therefore, the defendant is not entitled to summary judgment. At oral argument, the defendant argued that he was moving for summary judgment as to the plaintiff's complaint, based upon the allegations of his second special defense.
While it is improper for a plaintiff to move for summary judgment on a special defense, a defendant may properly move for summary judgment as to the complaint, based upon the allegations of a special defense. See Maulucci v. Canevari, 8 CTLR 438, 439 (February 26, 1993, Hennessey, J.); Centerbank v. Silvermine Land Investment Bank Corp., 8 CTLR 61, 62 (December 16, 1992, Lewis, J.).
In the present case, the defendant states in his motion for summary judgment that he "moves for summary judgment," and provides the second special defense as the basis for the motion. Accordingly, the defendant is not moving for summary judgment on a special defense, but rather is moving for summary judgment on plaintiff's complaint, based upon the allegations of his second special defense. Therefore, the court may properly consider the merits of the motion for summary judgment.
II. Preclusion From Bringing A Cause of Action Against A Tenant
The defendant argues that the general principle of insurance law is that where the terms of a lease impliedly indicate that the lessor is to obtain fire insurance, the lessee will not be held liable for fire damages caused by the lessee's negligence, unless the parties' intent is clearly to the CT Page 6880 contrary. The defendant argues that most decisions have held that unless the lease contains an express provision holding the defendant lessee liable for fire damages caused by the lessee's negligence, the fire insurance is considered to be for the mutual benefit of the lessor and the lessee; therefore, the insurer May not maintain a subrogation action against the lessee.
The plaintiff argues that the courts have relied upon several factors in determining whether or not the lease contains an implied covenant requiring that the lessor obtain fire insurance. The plaintiff argues that the first factor which the courts have considered is the presence of a lease provision requiring that the tenant return the premises in good condition, with the exception of damage by fire. The plaintiff argues that the lease in the present case does not contain such a provision. Plaintiff argues that a second factor the courts have considered, which is present in this case, is a lease provision requiring that the defendant lessee not permit any acts or storage on the premises which would be prohibited under the terms of a standard fire insurance policy. The plaintiff argues that while this clause may imply that the lessor intended to obtain fire insurance, it does not imply that the lessee "could not also obtain fire insurance." (Plaintiff's Memorandum, pg. 4). Plaintiff also argues that a lease provision requiring the lessee to pay for damages caused by "misuse or neglect of the premises by lessee" does not constitute a waiver of claims for damage caused by the defendant lessee's negligence. Finally, the plaintiff argues that the intentions of the parties to the lease are questions of fact, which may not be determined on summary judgment.
No Connecticut case law addresses the issues raised by the present case.
 [T]here is no right of subrogation for an insurer against either one who is covered as a named insured in relation to the loss at issue, or any party who is covered as an additional insured in relation to that loss. Thus, an insurer's subrogation interest usually is limited to rights an insured may have against third persons — that is, persons who are not parties to or beneficiaries of the insurance relationship that gives rise to the subrogation claim by an insurer. CT Page 6881
R. Keeton A. Widiss, Insurance Law, 221 (1988).
 The modern trend of authority holds that the lessor's insurer cannot obtain subrogation against the lessee, in the absence of an express agreement or lease provision establishing the lessee's liability, because the lessee is considered a co-insured of the lessor for the purpose of preventing subrogation; the parties are co-insureds because of the reasonable expectations they derive from their privity under the lease, their insurable interests in the property, and the commercial realities under which lessors insure leased premises and pass on the premium cost in rent and under which insurers make reimbursement for fires negligently caused by their insureds' negligence. . . .
 [I]nconsistent with subrogation are lease provisions that place demands on the lessee that create an inference that the lessor is carrying insurance for the mutual benefit of the lessor and lessee.
6A J. Appleman, J. Appleman S. Liebo, Insurance Law and Practice 4055 (Supp. 1992), citing, inter alia, New Hampshire Ins. Group v. Labombard, 155 Mich. App. 369, 399 N.W.2d 527
(1986) (negligent lessee occupies a position similar to an insured, because lessee may reasonably expect that rental payments will be used to cover lessor's fire insurance premiums; lease implies that lessee would not be liable to lessor for fire damage, since lease provision requiring lessee to follow underwriters' requirements implies that lessor would obtain fire insurance for the mutual benefit of lessor and lessee); Cascade Trailer Court v. Beeson, 50 Wash. App. 678, 749 P.2d 761 (1388). (Lessee may reasonably expect that lessor's fire insurance will cover lessee, unless the parties agreed otherwise; therefore, lessee is considered to be a co-insured); Sutton v. Jondahl,532 P.2d 478 (OKl. App., 1975) (lessee is a co-insured of the lessor, absent an express agreement to the contrary since both lessor and lessee have insurable interests in the property and lessee's rent is used to pay insurance premiums).
Nevertheless, some decisions have held that the insurer may maintain a subrogation action against the lessee. See, e.g., Winkler v. Appalachian Amusement Co., 238 N.C. 589,79 S.E.2d 185 (1953) (lessee is responsible to lessor and insurer for negligently-caused fire, despite lease provision requiring CT Page 6882 lessor to obtain insurance); Page v. Scott, 263 Ark. 684,567 S.W.2d 101 (1978) (lease agreement does not imply that fire insurance is for the mutual benefit of lessor and lessee, since the lease, inter alia, did not except loss by fire from the lessee's obligation to return the leased property in good condition; payment of rent cannot be equated with the payment of fire insurance premiums, because the amount of rent depends upon the supply and demand of housing, not upon the cost of fire insurance).
In the present case, the lease does not contain any express provision stating that the lessee will be held liable for his negligence. The lease states: "Lessee agrees to pay for all damage to the building, as well as all damage or injury suffered by tenants or occupants thereof caused by misuse or neglect of the premises by lessee." In their affidavits, both defendant Mark and John Samsel state that they intended that defendant Mark should not be held liable for damage to the building, unless the damage resulted from his misuse of the property or from his failure to maintain the property. In his affidavit, defendant Mark states that the fire started when he tipped over a butane torch which he was using to prepare a dental mold. The property damage was not caused through the types of conduct for which the lease expressly states that the defendant would be held liable, "misuse or neglect of the premises."
In addition, the lease states: "Lessee shall [not] permit on the premises any act, sale, or storage that may be prohibited under standard forms of fire insurance policies, nor use the premises for any such purpose." The court considers this lease provision to be one which creates "an inference that the lessor is carrying insurance for the mutual benefit of the lessor and lessee." 6A J. Appleman, J. Appleman S. Liebo, supra, 4055.
This court finds persuasive the rule described in 6A J. Appleman, J. Appleman S. Liebo supra. We conclude that the absence of an express provision holding the defendant liable for his negligence and the provision creating the inference that the lessor is carrying fire insurance bars the plaintiff's subrogation cause of action. Accordingly the defendant's motion for summary judgment is granted.
Hennessey, J. CT Page 6883