Jack CAUDILL *v.*
Kenneth SNOW and Jessie O. MERRYMAN

CA 83-455 679 S.W.2d 210

Court of Appeals of Arkansas
En Banc
Opinion delivered November 7, 1984

2

*Kendall & Schrantz,* by: *Steven Lee Wood,* for appellant.

*Everett & Whitlock,* by: *John C. Everett,* for appellee Merryman.

*The Niblock Law Firm,* by: *Curtis E. Hogue,* for appellee Snow.

GEORGE K. CRACRAFT, Chief Judge. Appellant appeals from the trial court's refusal to grant his post trial motions to conform the pleadings to the proof and to reform the jury verdict. We find no error.

Jessie O. Merryman owned approximately 90 acres of woodland which he wished to put into pasture. He orally contracted with Kenneth Snow to clear the land. Under an oral agreement with Snow, Jack Caudill participated in the bulldozing operations. After the work was completed a dispute arose between the parties. Appellant Caudill brought an action against Snow as the general contractor and Merryman as owner of the land based upon two alleged oral contracts — one with Snow to clear the north half of the property at an hourly rate for which he claimed the sum of $800 to be due, and one with Merryman for clearing the south half for a contract price of $3,050 for which he claimed a mechanics lien.

Merryman denied any contract with Caudill and asserted that he had made a contract only with Snow. Merryman counterclaimed against Caudill for damages to his real estate and cross-claimed against Snow for damages for breach of contract. Snow admitted the two oral contracts to clear Merryman's land but denied causing any damage to the property or breaking the contract in any way. Snow

cross-complained against Merryman for $2100 which he alleged he still owed him on the contract.

At the trial there was testimony offered by the parties in support of their respective positions. Caudill testified that he had an independent contract with Merryman for clearing the land and that there was due him the sum of $3,050 on the contract price. He further testified that he had an agreement to do work for Snow at an hourly wage for which he was entitled to $800. Merryman testified that he had no contract with Caudill and that his only contract was with Snow, even though he knew that Caudill was working under some arrangement with Snow. He offered testimony with regard to his damages which was contradicted. Snow stated that he had an arrangement with Merryman to clear the entire tract and had subcontracted one-half of it to Caudill on agreement that he would give him one-half of the contract price. He stated that there was due him under the contract the sum of $4200, half of which he felt he owed to Caudill, and admitted that he was indebted to Caudill for $800 for additional clearing done by him.

The court directed a verdict in favor of Caudill against Snow for the sum of $800. All other issues were submitted to the jury. The jury returned verdicts for Caudill on Merryman's claim against him for damages, in favor of Snow as to Merryman's cross-complaint against him for breach of contract, and for Merryman in Caudill's claim against him on the independent contract for clearing. On the cross-claim of Snow against Merryman the jury returned a verdict for Snow in the amount of $4200. The jury, however, added in longhand on the verdict form submitted to them the following words: "With stipulation that Kenneth Snow will pay Jack Caudill the amount of $2100." At that time the court instructed the jury that they were not permitted to put a condition on a verdict and sent them back to the jury room with instructions to reconsider their verdicts and to return them in court without stipulations or conditions.

After reconsideration the jury deleted the stipulation with regard to the $2100 in their verdict on the cross-claim of

Snow against Merryman and made no changes in any other verdicts. These verdicts were received and recorded by the court.

The appellant thereafter filed a motion with the trial court in which he asserted that even though the right of Caudill to recover $2100 from Merryman was not raised in his pleading, the issue was tried with the implied consent of the parties and the court ought to now amend the pleadings to conform to the proof. Appellant also asserted that the jury, by their initial conditional verdict, expressed an intention that Caudill recover $2100 from Merryman and therefore the verdict ought to be amended to conform to the true intention of the jury. The trial court denied both motions and entered judgment in accordance with the verdicts after ordering a remittitur of $2100 as the jury verdict was in excess of the amount Snow sued for. Snow does not appeal from the order of remittitur.

Caudill contends on appeal that the trial court erred in denying his post trial motions to amend the pleadings to conform to the proof and to conform the verdict to the clear intent of the jury. We first address appellant's contention that the verdict should be reformed to reflect the jury's intention.

Under the circumstances which arose there were several options open to the court. The trial court does have power to determine what the jury's intention is when the verdict may be fairly interpreted or where it is obvious and manifest although incorrectly expressed under a mistake of law. When the jury's intention can be ascertained the trial court is accorded the power to modify the verdict to conform to the jury's intent. *Traylor* v. *Huntsman & Allis-Chalmers*, 253 Ark. 704, 488 S.W.2d 30 (1972). Where the jury's intent is not manifest or the verdicts are inconsistent with each other the trial court has authority to poll the jury to determine their intention or to resubmit the issue on proper instruction, as was done in this case. *Mattingly* v. *Griffin*, 235 Ark. 1028, 363 S.W.2d 919 (1963).

Appellant did not request that the jury be polled or that

on resubmission it be instructed on, or furnished a verdict form which would have permitted recovery on, appellant's amended claim. The case was resubmitted to the jury on the original verdict forms without objection. The jury then returned an entirely new verdict which made no reference to Caudill. The second verdict then became the jury's verdict. We conclude that the proper rule to apply is stated in 89 C.J.S. *Trial* § 512 (1955) as follows:

> *Effect of Reconsideration or Change of Verdict.* Where the jury have been sent back to correct a verdict which has not become final and the jury, on reconsidering, are unable to agree on a verdict, and are, therefore, discharged, the original defective verdict cannot be accepted and treated as the verdict of the jury; and after the court has permitted the jury to retire and return a changed verdict it is error for the court to reject this verdict and enter judgment on the verdict first returned since the verdict subsequently returned may properly be accepted and used as the basis for judicial action, unless the second verdict is in some manner defective.

Cited as authority for the rule is *Bino* v. *Veenhuizen,* 141 Wash. 18, 250 P. 450, 49 A.L.R. 1297 (1926) which states:

> In *Grant* v. *State,* [33 Fla. 291, 14 So. 757 (1894)] this same question was urged upon the court. The court there said: 'The judge refused to receive the verdict when given by the jury, and they were instructed to retire, and present a verdict in proper form. Thereupon they retired, and brought in another and different verdict. The first verdict was never recorded, nor does it appear from the record before us that it had ever been affirmed as the unanimous finding of the jury. The jury having retired and brought in a different verdict, which was recorded, it cannot be held that the first is the verdict of the jury, or that it has any validity whatever. The case was still in the hands of the jury upon their second retirement, and, not being bound by their former action, they were at liberty to review the case, and bring in an entirely new verdict.'

We think the trial court committed no error in refusing to record this defective verdict, and enter judgment thereon.

See also *Whitehead* v. *City of Tulsa*, 624 P.2d 65 (Okla. 1980); *Roth* v. *Meeker*, 27 Ill. Dec. 840, 389 N.E.2d 1248 (1979); *Sears, Roebuck & Co.* v. *Chandler*, 152 Ga. App. 427, 263 S.E.2d 171 (1979); *Sweeney* v. *Wiggins*, 350 So.2d 536 (Fla. App. 1977).

We conclude that while the trial court had several alternatives there was no error in opting, without objection, to refer the matter to the jury for its reconsideration and correction, and when this was done the jury had a right to return an entirely different verdict, which then became its *only* verdict, the one on which the judgment should be entered.

In view of our conclusion on this point we do not address the issue of the power of the court to amend the pleadings to conform to the proof at this stage of the proceedings or its power in any event to reform the verdict after the jury has been discharged.

Affirmed.

MAYFIELD, J., concurs.

MELVIN MAYFIELD, Judge, concurring. I want to add a word of explanation as to the basis of my agreement with the majority opinion.

As I understand it, the appellant is not now arguing that he is entitled to a personal judgment against Merryman. He now contends that he is entitled to a judgment in rem for $2100 against Merryman's land and to foreclose a mechanic's and materialman's lien, under Ark. Stat. Ann. §§ 51-601, 51-604—51-626 (Repl. 1971), for the work he says he did on the land as a subcontractor for Snow. Thus, he argues that in keeping with the decisions in *Thompson* v. *Brown*, 5 Ark. App. 111, 633 S.W.2d 382 (1982) and *Traylor* v. *Huntsman*, 253 Ark. 704, 488 S.W.2d 30 (1972), his

complaint should be amended to conform to the evidence introduced and the jury verdict reformed to express the jury's intent to reach the result above stated.

In the first place, the complaint did not need to be amended as the lien theory was pled as an alternative ground for recovery. In the second place, as the majority opinion points out, when the case was resubmitted to the jury, an entirely new verdict was returned which made no reference to appellant. While *Traylor* allows the court to amend a verdict, even after the jury has been discharged, that case holds that this authority should be exercised only when the jury's intention is incorrectly expressed under a mistake of law and not of fact, and only when its intention can be ascertained with certainty.

In this case, the appellant did not request an instruction or verdict form in keeping with the contention he now makes on appeal. Moreover, he did not request that the trial court make any attempt to ascertain the jury's intention upon the return of either verdict. Under all the circumstances, I am unable to conclude that the trial court erred in denying appellant's post-trial motions.